We're now moving to Kistner v. The City of Buffalo. That's two cases in tandem. It's also Earl Kistner v. The City of Buffalo. That's 23-305-8 and 23-175. And my understanding is that the parties have agreed to take all of their arguments in a big chunk, so that's you, Mr. Lee, going, and then you'll have two minutes for rebuttal, and then we'll hear from you, Mr. Ruff. Is that right? Good morning, Your Honors. David Lee, Assistant Corporation Counsel for the Appellants. May it please the Court, as Your Honor just pointed out, we do have two plaintiffs here. We have James Kistner and Earl Kistner. I think I'll start with James Kistner. So the first issue with James is the criminal contempt charge, which relates to the damage to the police vehicles. Is it the first issue whether we have appellate jurisdiction over this? Yes, that's true, Your Honor. I probably should have started with that. It's the defendant's position that this Court does not have to resolve any factual disputes in the officer's favor to determine that the officers are entitled to qualify. The officers contend that the father jumped at the car. True, Your Honor. And Mr. Kistner's position is that he did not jump at the car, but the car came at him and hit him. Do you accept that for purposes of this appeal? That's what Mr. Kistner's position is? Yes, Judge. That that's what happened for purposes of this appeal? No, what happened is... If you don't accept what he says, then why isn't that a factual dispute, which leads to the conclusion that we don't have appellate jurisdiction? Your Honor, Mr. Kistner doesn't even remember the incident. So if he doesn't come in here and testify in a deposition or anything that the car hit him... When you look at the video, could a reasonable juror conclude that he did not jump at the vehicle, but that the vehicle struck him? I think, Your Honor, a reasonable juror could conclude that, but... And if a reasonable juror could conclude that, don't we assume that to be the case for purposes of this appeal? Okay. I think you could assume that fact, Judge, but we have to talk about now whether that's material to the qualified immunity analysis. What the defendant's position is on that is that that's not a material... You don't think it's material to the qualified immunity analysis whether the officers hit him in the circumstances here, but I think what's material is that there are different interpretations of the video, and that's why qualified immunity should apply here because we're talking about the officer's perception of what happened. And even if Mr. Kistner's position... I think when you have different interpretations of a video, the proper analysis is you have to assume the plaintiff's interpretation for purposes of summary judgment, for purposes of appeal, for purposes of determining whether we have appellate jurisdiction. I think what my point is, Judge, that there are different interpretations that can be gleaned from the video, but I think that only underscores why the officers are entitled to qualified immunity in this case because it's not clear, so there is some ambiguity here. That seemed a little later in the analysis. Right now, we're trying to figure out, do we have jurisdiction even to hear it? And are you disputing our case law, including the very recent case like Jock, that says if there are material facts in dispute that are relevant to the qualified immunity, we don't have appellate jurisdiction. It doesn't meet one of the criteria that we have for an interlocutory appeal. I agree with that standard. Okay, so what would help me at least, and I think Judge Chen is asking for the same thing, is what do you think is not disputed that is not disputed that would compel us to conclude that we can even hear this case? The officer's perception of what happened, Judge. But the officer's perception is not the only one that could be recognized here. Indeed, the officer says the man came at the car. Now, that may be believed, but it may not be believed by the jury once they see the tape and once they hear from the witness who, whatever he may remember or not remember about the accidents, he does remember enough to have said he didn't, the car came at him. Okay, so we assume the car came at him. We assume the officer is not telling the truth about him having come at the car. How do you succeed in that, in those circumstances? Your problem, it seems to me, is you're not accepting the facts in the light most favorable to the plaintiff. I certainly am trying, Your Honor, and if it's coming across that way, it is definitely not I think, maybe I'm not expressing myself clearly here, but so if we look at whether this, whether Mr. Kistner's position that he was hit by the car is material to the qualified immunity analysis, one point I think I'd like to make is that under a qualified immunity analysis, the law allows for reasonable mistakes of fact. So my position is less Your position is that the police officers believe that he jumped at the car, that even if they are mistaken, they're entitled to qualified immunity. That's right, Judge. But couldn't a reasonable jury conclude that the police officers are lying about this, that they know he didn't jump at the car and that they came up with this story to cover up their error in hitting him? Is that not a reasonable conclusion that a jury could make? I don't believe so, Your Honor, because And if we disagree with you and we decide a jury could reach that conclusion, do we have appellate jurisdiction? Not for James and not on the criminal contempt charge. You know, there's no question you could argue to a jury what they perceived and the arguments and all that. Our concern here is we would have to say that even on the version that's adverse to your client, he gets immunity. And that's what seems to be difficult to do here. But I mean, I don't think any of us are suggesting you don't get to argue to the jury that it happened the way your clients are saying it happened. Do you have anything else you want to add to why we should go ahead and take this in light of these concerns? I think I'd have to draw back on the qualified immunity to standard and that it allows for reasonable mistakes and that the video doesn't blatantly contradict the officer's perception. Well, I understand that if you're at trial and you say, I thought he was coming at me. The jury could say, no, he wasn't coming at you, but I see how the officers could have thought that. But I'm not sure we can say that's the only conclusion that they can reach. Do you dispute that? That's the only conclusion that the jury could reach. I suppose I know the jury could reach the conclusion that that would be in favor of Mr. Kistner, but I don't think it would be material to the qualified immunity analysis because the video doesn't blatantly contradict what the officer's perception is. When you say blatantly contradict, does it contradict at all? I'm not sure what you mean by putting in the word blatantly. Well, I guess what I'm saying is that let's say the officers were mistaken if their perception was mistaken. They may have been mistaken, but the question is whether a jury could find that they're lying, that it wasn't a matter of an inadvertent mistake, that they made up the story to cover up them hitting him. I think it's too close. It's too close of a call. And if you look at the district court's decision with Judge Gallardo and he said, well, it's subject to different interpretations. In my view, that only underscores that qualified immunity applies in this case because it's not like, I don't think the jury could. If they intentionally hit him, he was trying to flag them down to inquire what happened. And if they intentionally hit him, you think qualifying immunity would protect that? If the officers intentionally hit Mr. Kistner, no. Yes, that's my question. Well, it would be, no, not if they intentionally hit him, no. Okay. On the son, the video could be interpreted to show that the officers, that he's walking away, that the officer, one officer goes and grabs him, pulls him into the middle of the street, and then two or three other officers come and they tussle with him and they apparently take away his phone. Could a reasonable jury find that that was excessive force, unnecessary force, unreasonable force? No, I don't think so, Your Honor, and the reason is because he wasn't fully cooperative. I mean, I would totally agree if Earl didn't sort of pull away from the officers after Mr. Schultz was sort of leading him into the road, or if Earl didn't sort of, like when Officer Schultz went to get the phone, if Earl didn't kind of move away, then I would say, yeah, then Earl was not fully compliant here and the force was so minimal that it doesn't rise to the level of a constitutional violation and Earl wasn't injured at all, which I think is not may not be dispositive, but it certainly goes toward whether the amount of force used was de minimis, and we don't even need to look at the injury to see if the amount of force used was de minimis. We can just look at the video itself. I mean, there was some pushing and pulling back and forth only after Earl pulled away from the officers twice. So that's on Earl. I mean, there is a disorderly kind. I think we'll hear from you on rebuttal. Okay, thank you. May it please the Court, Your Honors. R. Anthony Rupp III on behalf of James and Earl Kishner. I'm glad to see that the Court is not beyond the jurisdictional issue in questions to Mr. Lee because I think that's where the Court's inquiry should begin and end. I did send a letter to the Court with some recent case law from the Second Circuit dealing with the issue of interlocutory appeals on qualified immunity since the briefs were submitted. Again, the case law is uniform that the Court lacks jurisdiction in a situation where there are issues of fact. In this case, there are myriad issues of fact. The record is replete with them in both James Kishner's case and Earl Kishner's case. I will not take the Court's valuable time this morning to delineate them as several of them were Just on Earl, you heard counsel say he was de minimis and he did seem to be resisting. How do you respond to that? Well, Judge, the District Court Judge Villardo found that the instruction that was given to Earl, if any instruction was given at all, because Earl denies that he was told to do anything, but the District Court found that the testimony and the indication from Officer Schultz, who was in conclusion, it's not clear whether he told him to just stay back and not interfere or told him to stand on the sidewalk. But what we see in the video is at some point Officer Schultz deviated from escorting the handcuffed James Kishner to one of the patrol vehicles and grabbed Earl Kishner and dragged him into the street where they then confiscated his cell phone and made him give up his license and things like that. It's unclear what instruction he violated. In the absence of a clear instruction to Earl that he violated no force, de minimis or otherwise, was warranted in that instance. So again, we have issues of fact where I believe Officer Schultz admitted before the District Court in the motion papers that he did not recall precisely what he told Earl. Earl said he received no instruction whatsoever. He was simply trying to call an ambulance for his injured father who was lying in the street with what he indicated was a head injury. He wanted an ambulance. Officer Schultz, of course, canceled that ambulance. So Earl was simply trying to help his father. There's no indication that he violated any clear instruction from any of the officers, Officer Schultz included. There are a lot of different reports and recommendations and orders from the District Court. So there's just a bit of housekeeping I want to make sure. In addition to the four officers present at the time, there's claims against Daniel Durenda, Byron Lockwood, Anthony McHugh and David Santana. Is that right? Yes, I believe that's correct, Your Honor. But Durenda and Lockwood's Kessner's 1983 claims were dismissed by the District Court against Durenda and Lockwood, though. Is that correct? I believe that's true, Your Honor. Yes. We did at one point replete our position with respect to the then Commissioner was that there was a failure to discipline any of these officers. But that's not before us. I'm sorry? That's not before us. I believe that is not before you on this appeal. No. All right. Thank you, Your Honor. Thank you. Going back to James and the criminal contempt charge, there's no allegation in this case that the officers intentionally struck Mr. Kessner, James Kessner, with the car. There was a claim in this case that the accident was caused by negligent driving on the part of Officer McDermott. That claim was dismissed. So there's no claim in this case that Officer McDermott intentionally hit James with the car. So the only issue before the Court is could the officers have reasonably believed that James Kessner put himself into the car? And I think what my position is is that it wasn't totally unreasonable. And that's why whether Mr. Kessner says that he didn't do that, it doesn't defeat qualified immunity. I'm sorry, and what I'm struggling with is you seem to not be engaging with our doctrine on interlocutory appeals. And part of what you have to do is to show us why this denial of qualified immunity fits within one of those. And it does when, as a matter of law, the only issues are legal and we can decide them, or when there are no material facts in dispute. And so whether or not ultimately your clients prevail is not what we are dealing with right now. So please talk to us, not as if what you're going to tell a jury, but why we actually have appellate jurisdiction to hear this case based on our interlocutory appeal doctrine. I think because there's no genuine dispute judge that the officer's perception of the accident. That's my answer. The charge, as I understand it here, the claim is whether they had a basis for thinking that Kessner was guilty of criminal mischief or reasonably believed him to have been. If I understand this record, Officer McDermott testified that Kessner threw himself at the vehicle while it was stationary. That was her first version of events. And when she was shown the video, then she altered it that he appeared to be moving forward, or she admitted that her patrol car appeared to be moving forward. I mean, just the very fact that the versions change would raise a credibility issue, wouldn't it? Well, I think that it wouldn't raise a credibility issue in the sense that that was Officer McDermott's recollection of the accident before she was shown the video. Then when she was shown the video, and I wasn't pressing the depositions for this case, but my understanding is before she was shown the video, that was her recollection of the accident. After she's shown the video, she says, oh yeah, my car was moving forward. So I don't think that presents a credibility issue. It seems to me you're asking us to look at this in the light most favorable to you, not most favorable to the plaintiff. But all right, thank you very much. Thank you so much. We will take this case on submission. That concludes our argument on the cases on the appeal calendar today. We do have one case for submission. I'll note it for the record. It's Economic Alchemy v. Federal Reserve Bank of New York.